FILED
SALINE COUNTY
CIRCUIT CLERK

2019 SEP 23 PM 3:07

IN THE CIRCUIT COURT OF SALINE COUNTY, ARKANSAS
CIVIL DIVISION

ERIN SCHLAGEL, And all others          PLAINTIFF
Similarly situated

V.                      CASE NO. 63-CV-19-677-3

UNITED SERVICES AUTOMOBILE ASSOCIATION          DEFENDANT

## FIRST AMENDED COMPLAINT

Plaintiff, Erin Schlagel, on her own behalf and on behalf of all Arkansas residents similarly situated, through their undersigned attorneys, hereby complain and allege for their First Amended Complaint against Defendant USAA as follows:

## SUMMARY OF CASE

1. This is a class action lawsuit on behalf of Plaintiffs and all similarly situated against Defendant United Services Automobile Association ("USAA") for its implementation of an improper scheme designed to wrongfully deny Arkansas policy holders their first-party medical payment insurance benefits. This action seeks to remedy USAA's illegal conduct and enjoin it from continuing to perpetrate this scheme against Arkansas insurance consumers.

## PARTIES AND JURISDICTION

2. Plaintiff Erin Schlagel was, at all times relevant hereto, a resident of Benton, Saline County, Arkansas.

3. The plaintiff paid insurance premiums to USAA in exchange for first-party medical payment insurance.


EXHIBIT 7

4. At all times material hereto, Defendant USAA was a foreign insurer engaged in the insurance business in the State of Arkansas.

5. USAA accepted insurance premium payments from the plaintiff in exchange for providing her with first-party medical payments insurance

6. The total damages for this case are well short of $5,000,000.00 so the Court has jurisdiction over the parties and the subject matter of this lawsuit and venue is proper.

## ALLEGATIONS COMMON TO ALL COUNTS

7. USAA specifically targets and markets to Arkansas service members and their families for the purpose of selling insurance products.

8. USAA represents to these servicemen and servicewomen and their families that it is committed to taking care of and supporting them and their families, and touts that "[w]hen you join USAA, you become part of a family that's there for you every stage of your life."

9. USAA offered and sold in Arkansas a form of first-party medical payments insurance that pays an insured's medical expenses, regardless of fault, in the event of an accident or occurrence.

10. A.C.A. 23-89-202 (1) codified the Med Pay Requirements and required USAA to pay all reasonable and necessary expenses for medical, hospital, nursing, dental, surgical, ambulance, funeral expenses, and prosthetic services incurred within twenty-four (24) months after the automobile accident, up to an aggregate of five thousand dollars ($5,000) per person and may

include any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing

11. Plaintiffs, and other similarly situated Arkansas Residents, purchased Med Pay coverage from USAA.

12. Plaintiffs submitted claims to USAA under their Med Pay coverages that were improperly handled and denied.

13. Arkansas Code 23-89-208 (a) required USAA make payment on a monthly basis as benefits accrue and section (b) makes the payments overdue if not paid within thirty (30) days after the insurer received reasonable proof of the amount of all benefits accruing during that period. Proof of loss has been defined in Arkansas as a submission of the medical bills and records. *State Farm Mut. Auto. Ins. Co. v. Brown*, 48 Ark. App. 136 (1995)

14. Despite that obligation, USAA has adopted an undisclosed and illegal scheme through which USAA arbitrarily denies and/or reduces Med Pay claims submitted by its insureds. USAA's scheme operates to uniformly deny and reduce medical claims submitted by insureds relating to a covered accident or occurrence for which insureds seek medical care.

15. Through its scheme, USAA essentially engages in a war of attrition, making it so difficult and time consuming for insureds to obtain their rightful benefits that insureds eventually just give up.

16. The result of the scheme is that USAA wrongfully keeps significant sums of money that rightfully belong to its insureds in Arkansas

17. To implement and carry out USAA's unlawful scheme, USAA entered into a Master Services Agreement ("MSA") with a third-party known as Auto Injury Solutions, Inc. ("AIS") under the guise of AIS providing "independent" and impartial medical bill audit services for the purposes of limiting insurance fraud.

18. USAA pays AIS to implement the scheme in a manner that uniformly and arbitrarily denies and/or reduces medical payment claims from insureds, and denies claims without conducting a reasonable investigation based on all available information. AIS's process is an automated, computer based system which relies on technology to reject as many claims as possible without requiring any human investigative input or review, as required by Arkansas law, of actual medical records.

19. Upon information and belief, USAA's payment structure incentivizes AIS to uniformly and arbitrarily reduce medical payment reimbursements to insured's and their health care providers by paying AIS a percentage of the savings resulting from the unlawful scheme.

20. AIS serves as USAA's agent in connection with USSA's handling of Med Pay claims submitted by its insureds from Arkansas. Pursuant to the MSA, USAA delegates its responsibility and obligation to properly adjust claims and to determine whether medical expenses are reasonable to AIS.

21. When an insured submits a claim to USAA, they and their health providers are instructed to send the insured's claim information (medical bills and records), including any appeals, to AIS, not to USAA.

22. Upon receipt of receipt claim information from an insured, AIS conducts what is

referred to by USAA as a Medical Bill Audit ("MBA") process.

23. The MBA process is designed, largely through automated computer processes, to categorically eliminate, abate, and/or reduce the amount USAA pays for its insured's health care expenses based upon coding errors, sham medical necessity reviews, and confidential statistical information, rather than the individual character of health care services required by an insured and their related expenses.

24. For example, the MBA process automatically denies an insured's claim if the related medical bill contains a coding error, even though a quick review of the associated medical records informs USAA and AIS demonstrate that the bill should be paid despite the coding error.

25. Further, the purported medical review services provided by AIS as part of the MBA are a sham.

26. The records review reports ("Reports") generated by AIS purportedly created by physicians and nurses with whom AIS contracts to provide "independent" medical record review services uniformly deny reimbursement for treatment received by USAA's insureds on the basis that the treatment was unnecessary.

27. These Reports are prepared without basis in fact, are not supported by proper sources, and are contrary to the health treatment plan implemented by the insured's treating health care providers.

28. Also, AIS utilizes a computer software program to determine the amount USAA will

pay for health care charges submitted by its insureds. AIS's computer software program uniformly, unilaterally, and arbitrarily makes two types of reductions.

(a) First, AIS's software uniformly, unilaterally, and arbitrarily reduces the amount USAA will reimburse on health care providers' bills based upon a determination that the amounts billed were not "reasonable." AIS's software uniformly, unilaterally, and arbitrarily reduces the amount paid to an insured's health care provider based upon unidentified, confidential data linking like charges for services of other similar health care providers in an insured's geographic area. USAA then pays an arbitrarily generated allowed amount for charges in a given geographical region under the guise that the lower amount is "reasonable."

(b.) Second, AIS has secured access to databases containing information relating to allowable billing rates under agreements with preferred provider organizations (PPOs) and preferred provider network (PPNs). USAA, who has no direct PPO or PPN agreements with insureds' health care providers, wrongfully utilizes AIS's PPO and PPN databases to reduce the amounts USAA will reimburse their insureds or pay on behalf of their insureds under their Med Pay coverage.

29. MBA authorizes AIS to submit a claim denial on behalf of USAA to the insured without actually reviewing the associated medical records and without any input from USAA.

30. In sum, USAA's claim processing system, ran through AIS, is designed to reject claims at every possible level without a reasonable investigation based upon all available information. Such a process is contrary to Arkansas law.

**ALLEGATIONS REGARDING CLASS REPRESENTATIVES**

31. Plaintiff had Med Pay coverage with USAA at all times material hereto.

32. On November 16, 2018, Erin Schlagel was injured when she was struck by a motor vehicle.

33. At the time of her injury, Erin Schlagel had $5,000 in first-party Med Pay coverage through USAA.

34. Erin Schlagel incurred over $6,000 in medical bills and timely submitted proof of loss, proof of treatment, and copies of his medical bills to USAA in connection with the accident.

35. Pursuant to the MSA, USAA referred Erin Schlagel's claims to AIS to undergo the MBA process without disclosing to Schlagel that USAA delegated its duties to AIS.

36. Schlagel's Med Pay claims were improperly delayed, denied and/or reduced during the MBA process.

37. For example, USAA claimed that Schlagel's chiropractic treatment was not medically necessary in spite of the clear medical evidence and the unequivocal position of Schlagel's treating physicians.

38. USAA caused Schlagel damages by wrongfully handling her Med Pay coverage claim including, but not limited to, delaying timely payment of benefits, delaying recovery of her medical treatment, forcing her to retain counsel to get the claim paid and incur legal fees.

### COUNT I- VIOLATION OF A.C.A. 23-89-208

39. Plaintiffs incorporate by reference all prior allegations.

40. Arkansas Code Ann. 23-89-208 required USAA to pay the medical bills of the plaintiff and all others similarly situated on an accruing basis within 30 days of receiving a proof of loss.

41. A.C.A. 23-89-208 states that, "In the event the insurer fails to pay the benefits when due, the person entitled to the benefits may bring an action in contract to recover them and the insurer shall, in addition to the benefits received, be required to pay the reasonable attorney's fees incurred by the other party, plus twelve percent (12%) penalty, plus interest thereon from the date these sums became overdue.

42. Defendant is in violation of A.C.A. 23-89-208 by wrongfully delaying and/or denying Plaintiff and the Class their Med Pay benefits under their insurance policies within 30 days after the submission of a proof of loss.

43. As a result of Defendants' violation of A.C.A 23-89-208, the Plaintiff and the Class have been injured and are entitled to statutory damages.

### COUNT II- BREACH OF CONTRACT

44. Plaintiffs incorporate by reference all prior allegations.

45. Plaintiffs and all others similarly situated entered into a contract with USAA for Med Pay Coverage.

46. Pursuant to the contracts, in exchange for premium payments, USAA implied and covenanted that it would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of first-party Med Pay benefits.

47. USAA breached the contracts by utilizing a system designed to reject claims without a reasonable investigation based upon all available information, and thus, wrongfully delaying and/or denying Med Pay claims, causing Plaintiffs and the Class damages.

## CLASS ALLEGATIONS

48. Plaintiffs incorporate by reference all prior allegations.

49. Plaintiffs bring this action on their own behalf and on behalf of a class of persons similarly situated pursuant to Rule 23, Arkansas Rules of Civil Procedure.

50. The class is comprised of all persons who satisfy the following criteria:

(a) all Arkansas consumers who

(b) were insured by USAA for Med Pay benefits and

(c) who submitted a claim for Med Pay benefits within the applicable statute of limitations, and

(d) had their claim processed by AIS, resulting in any rejection or reduction or delay.

51. The class is so numerous that joinder of all members is impracticable.

52. The Complaint concerns a routine insurance claims practice as set forth above.

53. There are common questions of law or fact common to the class. These include whether or not USAA violated Arkansas law with respect to its Med Pay claims handling practices.

54. The claims of Plaintiffs are typical of those of the class.

55. All of Plaintiffs' claims are based upon the same factual and legal theories.

56. Plaintiffs will fairly and adequately protect the interests of the class.

57. Plaintiffs have no interest antagonistic to those of the class.

58. Plaintiffs' counsel is competent and experienced in consumer class actions and insurance litigation.

59. USAA has acted on grounds generally applicable to the class, thereby making final relief and declaratory relief appropriate with respect to the class as a whole.

60. The questions of law and fact common to the class predominate over any question affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

61. The amounts of actual damages per consumer, while not insignificant to a consumer, are generally small, and thus a consumer class action is particularly well-suited to address violations and for recovery by the class.

62. The class may be certified under Rule 23(b)(3), Ark. R. Civ. P., as such represents a superior method for the fair and efficient adjudication of this controversy in that:

(a) Most of the class members are not aware of their rights and have no knowledge that their rights have been violated.

(b) The interest of class members individually controlling the prosecution of separate claims is small because of the limited damages per consumer.

(c) Management of this class action is not likely to present significant difficulties.

(d) Defendant acted on grounds generally applicable to the class thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

(e) Certification of a class under Rule 23 of the Arkansas Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

63. Plaintiffs request certification of a class action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class, respectfully requests the following relief against Defendant:

(a) This Court certify the class and appoint Plaintiffs class representative and their attorneys as class counsel.

(b) Actual damages, statutory damages, costs and attorney's fees- all of which will fall well short of $5,000,000.00.

(c) For an order of disgorgement and/or restitution.

(d) For pre-judgment interest to the extent permitted by law.

(e) Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By: _____

John Doyle Nalley

Bill G. Horton, Ark. Bar No: 2002200
Caddell and Reynolds, P.A.
Attorneys for Plaintiffs
211 N. 2nd Street
Rogers, AR 72756
(479) 464-8269
(479) 464-8287 facsimile

AND

John Doyle Nalley, Ark. Bar No: 86132

Lovell, Nalley & Nalley

Attorneys for Plaintiffs

501 North Main Street, P.O. Box 606

Benton, Arkansas 72018

(501) 315-7491

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the foregoing to all counsel of record this 23rd day of September, 2019., including but not limited to Attorney Gene Williams, Smith, Williams, Hughes & Meeks, 500 Broadway Place, Suite 404, Little Rock, Arkansas 72201.

_____

John Doyle Nalley